**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**AT LEXINGTON**

**CIVIL ACTION NO. 14-104-DLB**

**JAMES DWIGHT BAILEY, JR.**                                          **PLAINTIFF**


**vs.**                    **MEMORANDUM OPINION AND ORDER**


**CAROLYN W. COLVIN, Acting**                                   **DEFENDANT**
**Commissioner of Social Security**

*************************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security.  The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff James Dwight Bailey, Jr. filed his current application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) payments, alleging disability as of September 15, 2010.  (Tr. 183-195).  Plaintiff's claim was denied initially and on reconsideration.  (Tr. 82-103, 104-29).  On August 8, 2012, Administrative Law Judge Roger L. Reynolds held an administrative hearing at Plaintiff's request.  (Tr. 30-81).  On November 19, 2012, ALJ Reynolds ruled that Plaintiff was not entitled to benefits.  (Tr. 13-29).  This decision became the final decision of the Commissioner when the Appeals Council denied review on January 16, 2014.  (Tr. 1-7).

1

On March 19, 2014, Plaintiff filed the instant action.  (Doc. # 1).  This matter has culminated in cross-motions for summary judgment, which are now ripe for review.  (Docs. # 16 and 17).

## II.  DISCUSSION

### A.    Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations.  *See id.*  Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently.  *See Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis.  Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform.  As to the last step, the burden of proof shifts from the claimant to the Commissioner.  *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th

Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (Tr. 18).  At Step 2, the ALJ found Plaintiff's obesity, depression not otherwise specified, personality disorder not otherwise specified, seizure disorder by history, alcohol abuse (allegedly in remission) and borderline intellectual functioning to be severe impairments within the meaning of the regulations.  (*Id.*).

At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to, an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.  (Tr. 19).  Before reaching this conclusion, the ALJ determined that Plaintiff's seizure disorder did not meet the requirements of Listing 11.02 (convulsive epilepsy) or Listing 11.03 (non-convulsive epilepsy) because his "medical records contain no evidence of seizures occurring more frequently than once a month after prescribed treatment."  (*Id.*).  The ALJ further found that Plaintiff did not meet the requirements of Listing 12.04 (affective disorders), Listing 12.05 (intellectual disability), Listing 12.08 (personality disorders) or Listing 12.09 (substance addiction disorders) because he manages many activities associated with daily living and has no history of decompensation.  (Tr. 19-21).

At Step 4, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform a "full range of work at all exertional levels," subject to the following limitations:

> [The claimant] cannot work at heights; never balance; no commercial driving; no work around industrial hazards; no work requiring exposure to concentrated temperature extremes; requires entry level work with simple, repetitive, 1-2-3 step procedures, no frequent changes in work routines, no

3

requirement for detailed or complex problem solving, independent planning
or the setting of goals; should work in an object oriented environment with
only occasional and casual contact with co-workers, supervisors, or the
general public.

(Tr. 21).  The ALJ further noted that the claimant is unable to perform past relevant work.

(Tr. 23-24).

Accordingly, the ALJ proceeded to the final step of the sequential evaluation.  At

Step 5, the ALJ found that there were a significant number of jobs in the national economy

that Plaintiff could perform.  (Tr. 24-25).  The ALJ based this conclusion on testimony from

a vocational expert (VE), in response to a hypothetical question assuming an individual of

Plaintiff's age, education, work experience, and RFC.  (*Id.*).  The VE testified that a

hypothetical individual with Plaintiff's vocational profile and RFC could find work at the

medium level of exertion as a janitor (24,000 state/1,200,000 nationally).  (Tr. 24).  The VE

further opined that Plaintiff could find work at the light level of exertion in housekeeping

(11,000 state/900,000 nationally) or assembly (14,00 state/865,000 nationally).  (*Id.*).

Based on the testimony of the VE and Plaintiff's age, education, work experience, and

RFC, the ALJ found that Plaintiff is capable of making a successful adjustment to other

work and thus concluded that he was not under a "disability," as defined by the Social

Security Act.  (Tr. 25).

**C.   Analysis**

On appeal, Plaintiff argues that the ALJ violated his right to due process by failing

to proffer evidence obtained post-hearing to him and his attorney.  Plaintiff also finds fault

with the ALJ's evaluation of his academic record and the VE's assessment of alternative

employment.  The Court will consider each of these arguments in turn.

4

**1.      Plaintiff has not been deprived of his right to due process**

The Fifth Amendment guarantees that no person shall "be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  Due process generally requires that an individual receive notice and an opportunity to be heard prior to the deprivation.  *Ferriell v. Comm'r of Soc. Sec.*, 614 F.3d 611, 620 (6th Cir. 2010).  "In the context of a social security hearing, due process requires that the proceedings be 'full and fair.'" *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401-02 (1971)(applying due process principles to a disability benefits case)).

To determine whether a social security hearing comports with due process principles, courts should apply the test set forth in *Mathews v. Eldridge.  Ferriell*, 614 F.3d at 620 (citing *Mathews*, 424 U.S. 319, 335 (1976)).  The *Mathews* test directs courts to balance the following three factors in evaluating procedural due process claims: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedure used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.  *Id.*

The first factor is easily satisfied in this instance because the Sixth Circuit assumes that a claimant has a property interest in disability benefits for which he or she hopes to qualify.  *Flatford v. Chater*, 93 F.3d 1296,1304-05 (6th Cir. 1996)(finding such a proposition critical to the U.S. Supreme Court's holding in *Richardson v. Perales*); *Ferriell*, 614 F.3d at 620 (recognizing that the private interest at stake in disability benefit cases is "potentially great").

As for the second factor, the Social Security Administration's Hearings, Appeals and Litigation Law Manual ("HALLEX") "provides 'guiding principles, procedural guidance and information' to adjudicators and staff of the Office of Hearings and Appeals." *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 397 (6th Cir. 2008)(quoting HALLEX I-1-0-1). Although "HALLEX procedures are binding on the Social Security Administration, they are not binding on courts reviewing the administration's proceedings." *Dukes v. Comm'r of Soc. Sec.*, No. 1:10-cv-436, 2011 WL 4374557 at *9 (W.D. Mich. Sept. 19, 2011)(citing *Bowie*, 539 F.3d at 399); *see also Lawrence v. Colvin*, Civ. A. No. 3:13-032-DCR, 2014 WL 640990 at *4 (E.D. Ky. Feb. 18, 2014)(collecting cases). Because HALLEX procedures "may embody, but do not *create* federal due process rights for claimants," an ALJ's failure to comply with HALLEX does not necessarily constitute a due process violation. *Eboch v. Comm'r*, No. 5:12-cv-649, 2012 WL 7809080 at *4 (N.D. Ohio Dec. 13, 2012)(citing *Dukes*, 2011 WL 4374557 at *9). However, "some courts have granted relief where the procedures were not followed and where the plaintiff demonstrates prejudice from the failure to follow the procedures." *Lawrence*, 2014 WL 640990 at *4; *Estep v. Astrue*, No. 2:11-0017, 2013 WL 212643 at *12 (M.D. Tenn. Jan. 8, 2013)(surveying relevant case law).

Plaintiff's claim focuses on HALLEX I-2-7-30, which generally requires an ALJ to proffer all post-hearing evidence to the claimant and his attorney. *See* HALLEX I-2-7-30, § A (stating that proffer is not required only if the claimant submitted the evidence, the claimant knowingly waived his right to examine the evidence or the ALJ proposes to issue a fully favorable decision). The ALJ should send proffer letters to both the claimant and his attorney, then enter a copy in the record. *Id.* The proffer letter must give the claimant time to object to or comment on the evidence; submit a written statement of facts and law that

6

the claimant believes applicable to the case in light of this evidence; submit written questions for the author of the proffered evidence; request a supplemental hearing; or cross-examine the author of the proffered evidence if the ALJ determines that such questioning is needed.  *See* HALLEX I-2-7-30, § B.  Although the Sixth Circuit has never found HALLEX I-2-7-30 to be coextensive with due process principles, it has held that an ALJ's undisputed failure to provide a claimant with a copy of post-hearing evidence constituted a due process violation.  *Watkins v. Sec'y of Health & Human Servs.*, 7 F.3d 237, 1993 WL 393075, at *1 (6th Cir. 1993).

In this case, the ALJ held an administrative hearing on August 8, 2012.  (Tr. 30-81).  During this hearing, the ALJ granted Plaintiff's request for a psychological evaluation and referred Plaintiff to consultative examiner Mary E. Allen Genthner for a psychometric battery.  (Tr. 74, 80).  The ALJ received Genthner's report at the end of September and added it to the list of exhibits.  (Tr. 29, 393-402).  This list, relied upon by the ALJ in rendering his decision of November 19, 2012, did not include a copy of the proffer letter allegedly sent to Plaintiff and his attorney.  (Tr. 29).  Although the proffer letter was dated October 22, 2012, about one month before the ALJ issued his decision, it did not become part of the administrative record until January 16, 2014, when the Appeals Council rejected Plaintiff's due process claim.  (Tr. 1-7).

Plaintiff maintains that neither he nor his attorney received a copy of the October 22, 2012 proffer letter.  (Doc. # 16-1 at 14-15).  He further surmises that the ALJ never attempted to proffer the post-hearing materials, prompting the Appeals Council to manufacture this letter for the sole purpose of dispensing with his due process claim.  (*Id.*).  In response, the Commissioner insists that the ALJ sent the proffer letter and denies any

wrongdoing by the Appeals Council.  (Doc. # 17 at 4).

Plaintiff presents no evidence to support his allegations, apart from the proffer letter's belated inclusion in the record and his own self-serving statements.  Nothing on the face of the letter itself suggests that it was drafted by another person or on another date. Plaintiff has not obtained any affidavits from SSA employees stating that the ALJ failed to send the proffer letter, nor has he produced any follow-up correspondence with the ALJ. While this might not normally be expected, both Plaintiff and his attorney were well aware of the examination date in this case.  After all, Plaintiff's counsel requested this evaluation at the hearing and Plaintiff met with Genthner shortly thereafter.  Because Plaintiff's counsel has handled many disability claims, he is no doubt familiar with the consultative examination process and would know when to expect Genthner's report.  It stands to reason that counsel would inquire further after a few weeks of radio silence, and yet, there is no record of such follow-up correspondence.  Having considered the lack of evidence, as well as the "presumption of regularity" that attaches to the actions of government agencies, the Court simply cannot conclude that the ALJ failed to proffer Genthner's report. See Creech v. Comm'r of Soc. Sec., 581 F. App'x 519, (6th Cir. 2014) (applying presumption of regularity in the context of social security appeals).

Although Plaintiff has failed to prove his central hypothesis, he has shown that the ALJ failed to comply with HALLEX I-2-7-30 in one respect.  That provision requires the ALJ to send copies of the proffer letter to both the claimant and his attorney and enter a copy of the letter in the record.  The administrative record shows that the proffer letter was not included on the list of exhibits attached to the hearing decision.  The Appeals Council added the proffer letter to the record at a later date.  However, this Court has already

observed that an ALJ's failure to follow HALLEX does not necessarily constitute a due process violation, and the Court is unaware of any case finding that an ALJ's failure to add a proffer letter to the record qualifies as a due process violation.  Moreover, the Court believes that the ALJ's failure to follow this particular aspect of HALLEX creates a very small risk of erroneous deprivation.

Case law also suggests that an ALJ's failure to follow procedures must be accompanied by a showing of prejudice to the claimant.  Here, Plaintiff has not indicated how he suffered prejudice from the ALJ's failure to include the proffer letter in the record.  His attempts to show prejudice were predicated on the ALJ's alleged failure to proffer Genthner's report, and since he has not produced sufficient evidence to support that assertion, the Court need not consider these arguments any further.

As for the third factor in the *Mathews* test, the Court begins by noting that Plaintiff has not suggested any additional or substitute procedural requirements.  Because the ALJ's HALLEX violation was relatively minor, and because there is such a small risk of erroneous deprivation in this case, the Court believes that the utility of any additional safeguards would be quickly outweighed by the fiscal and administrative burden imposed.  Thus, all three *Mathews* factors lead this Court to conclude that Plaintiff's hearing was "full and fair."

The Court would make one final observation in this case.  Plaintiff argues that an outright award of benefits is appropriate.  In the alternative, he requests remand.  Plaintiff attempts to analogize this case to *Hurst v. Sec'y Health & Human Servs.*, 753 F.2d 517, 521 (6th Cir. 1985), in which the Court reversed and remanded for an award of benefits because the Secretary relied on questionable medical reports in rendering his decision.

9

Although these documents were not necessarily fraudulent, their veracity was certainly questionable because the author had submitted fraudulent reports in the past.  Plaintiff fails to explain *why* this case is akin to *Hurst*, and the Court cannot see any basis for comparison.  Because Plaintiff has not shown that his hearing was anything less than full and fair, the Court sees no reason to remand this case at all, let alone award benefits outright.

### 2.      Plaintiff has waived his remaining arguments

"Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

Plaintiff generally alleges that "there are other minor errors regarding the ALJ's evaluation of Mr. Bailey's academic skills and the credibility of the Vocational Expert's identified alternative jobs which was addressed in Plaintiff's arguments to the Appeals Council which are contained in the record."  (Doc. # 16-1 at 15).  He also vaguely refers to "the nonsensical rejection of favorable portions of that post-hearing consultative evidence" and "the failure of the ALJ to fairly evaluate Mr. Bailey's mental impairment."  (*Id.*).  However, Plaintiff fails to give content to these "errors."  His brief does not describe, with any degree of specificity, *how* the ALJ erred, nor does it discuss what evidence he improperly considered (or failed to consider) in rendering his decision.  By presenting this Court with such a perfunctory statement of the ALJ's alleged errors, Plaintiff has waived these arguments.

10

### III.  CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)      The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2)      Plaintiff's Motion for Summary Judgment (Doc. # 16) is hereby **DENIED**; and

(3)      Defendant's Motion for Summary Judgment (Doc. # 17) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 31st day of January, 2015.



Signed By:

*David L. Bunning*

United States District Judge

G:\DATA\SocialSecurity\MOOs\Lexington\14-104 MOO (Bailey).wpd